IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| METRO AVIATION, INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br> Case No. 2:10-CV-445-TC |

This indemnity and contribution action against the United States of America stems from the crash of a small aircraft in Montana in 2007. All three people in the plane (two passengers and the pilot) died in the crash. The two passengers' estates asserted negligence claims against the owner of the plane (Metro Aviation, Inc.), the pilot's estate, and their insurers. After those claims were settled (one in state court and the other out of court), the insurance companies and Metro Aviation (collectively "Metro") filed a claim in this court against the United States of America under the Federal Tort Claims Act, contending that the negligence of federal air traffic controllers in Salt Lake City contributed to the plane crash and that the United States was liable for monetary damages.[1]

In March 2012, the United States filed a motion for summary judgment in which it

---

[1] Under the Federal Tort Claims Act, the United States may be held liable for the negligence of a government employee acting within the scope of his employment "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

contended that both Montana and Utah law prohibit the indemnity and contribution claims brought by Metro. (See Doc. No. 42.) The court found that Montana law was unsettled and so the court certified questions to the Montana Supreme Court. After the Montana Supreme Court issued its decision, the United States renewed its motion. Metro then filed a cross motion for summary judgment contending that the Montana contribution statute, as interpreted by the Montana Supreme Court and applied to this particular case, is unconstitutional because it violates the Plaintiffs' equal protection rights.

For the reasons set forth below, the court grants the United States's motion and denies Metro's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not in dispute here. Although the parties dispute whether the pilot and the air traffic controllers were negligent, the court need not make that determination in order to rule on the dispositive legal issues.[2] What matters most to the court's analysis is the procedural background, the current procedural posture of the case, and the guiding legal authority, including the Montana Supreme Court's recent ruling on legal questions certified by this court for resolution of Montana law.

On February 6, 2007, an airplane owned by Metro Aviation, Inc. (Metro) crashed near Bozeman, Montana. The airplane had taken off in Great Falls, Montana, and was flying to Bozeman. Federal air traffic controllers at the Salt Lake City International Airport controlled the

---

[2]For a recitation of events leading up to the crash, the court refers the reader to the parties' briefs. (See United States' Renewed Mot. for Partial Summ. J. (Doc. No. 99); Pls.' Mem. Opp'n U.S. Renewed Mot. for Partial Summ. J. (Doc. No. 107).)

2

airspace over Bozeman, Montana. The pilot, Vince Kirol, and both passengers, Paul Erickson and Darcy Dengel, died in the crash. Metro settled with Mr. Erickson's estate without litigation. The estate of Ms. Dengel sued Metro in Montana but that case settled before trial. Four of Metro's insurers paid the Dengel and Erickson settlements. The United States was not a party to the Dengel litigation and was not involved in the settlement negotiations with either the Dengel or the Erickson estates.

Metro filed this lawsuit under the Federal Tort Claims Act against the United States alleging that the Federal Aviation Administration (FAA) air traffic controllers were the cause of the crash. The claimed damages include the loss of the airplane, payment of the settlements to the Erickson and Dengel estates, and the related investigation and litigation costs. Metro asserts claims for negligence, contribution, indemnity, and subrogation against the United States.

Metro originally filed this matter against the United States in the federal district court for the District of Montana. On motion of the United States, the federal court in Montana transferred the case to this district, holding that venue was proper here because the FAA's Salt Lake Center Air Traffic Control directed and advised air traffic in Montana and, consequently, the alleged act or omission of the FAA air traffic controllers occurred in Salt Lake City, Utah. (See May 7, 2010 Order of the U.S. District Court for the District of Montana (Docket No. 3-21) at 2, 7.)

In 2012, the United States filed a motion for partial summary judgment on Metro's causes of action seeking indemnity and contribution. The United States contended that the claims are barred by both Utah and Montana law. The United States also argued that in the event that the Utah and Montana laws conflict, Utah law should apply because Utah is the state with the most significant relationship to the claims. Metro did not dispute that Utah law precludes the claims

for contribution and indemnity, but it argued that Montana law governed and that Montana law allowed both claims to go forward.

In a July 16, 2012 Order and Memorandum Decision, this court held that Montana law applied to the case but that Montana's law on the subject was unsettled. (See Doc. No. 73 at 5.) Accordingly, the court certified questions to the Montana Supreme Court.

The Montana Supreme Court issued an order on July 16, 2013, answering the following three certified questions:

> 1. May a person who has settled a claim with a victim then bring an action for contribution against a joint tortfeasor under § 27-1-703, MCA [Mont. Code Ann.], even though the victim never filed a court action?
>
> 2. Where a defendant in a pending action enters into a settlement with the plaintiff in advance of trial, does § 27-1-703, MCA (1997), allow the settling defendant to bring a subsequent contribution action against a person who was not a party in the tort action?
>
> 3. Does Montana recognize a common law right of indemnity where the negligence of the party seeking indemnification was remote, passive, or secondary, compared to that of the party from whom indemnity is sought?

Metro Aviation, Inc. v. United States of America, 305 P.3d 832, 833 (Mont. 2013). The Montana Supreme Court answered "no" to each question.

After the Montana Supreme Court decision was issued, the parties filed cross motions for summary judgment in this court incorporating the result of the state court's ruling into their analyses of the merits of the claims. Because the state court rejected Metro's interpretation of the Montana contribution statute and indemnity case law, the United States renewed its argument that both Utah and Montana law bar Metro's claims against the United States. Metro, apparently recognizing that its former (pre-certification) position on contribution was no longer a viable

4

position, raised a new argument that, based on the outcome of the state court's opinion, the Montana contribution statute is unconstitutional as interpreted by the Montana Supreme Court and as applied to Metro in this matter. Metro did not raise the constitutional issue at any time before it filed the cross-motion currently pending before the court.

## ANALYSIS

The court may grant summary judgment where, making all reasonable inferences in favor of the nonmoving party, there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Because there is no genuine dispute of any material fact, the court addresses only the dispositive legal issues.

As discussed below, the court finds that Montana law (as clarified by the Montana Supreme Court's answer to the three certified questions) bars Metro's indemnity and contribution claims against the United States and so is not in conflict with Utah law. Under either forum's laws,[3] the United States is entitled to summary judgment. In addition, for the reasons set forth below, Metro's equal protection claim is not properly before the court, so the court denies Metro's cross motion for summary judgment.

**Metro Aviation's Indemnity Claim**

Indemnity "shifts the entire loss from the one who has been required to pay it to the one who should bear the loss." Metro Aviation v. United States, 305 P.3d 832, 837 ¶ 23 (quoting Durden v. Hydro Flame Corp., 983 P.2d 943, 948, ¶ 25 (Mont. 1999)). Plaintiffs must show two things to establish a right to indemnify: "'[1] its liability to a third party arises only because of

---

[3]Metro concedes that if Utah law is applied, its claims are not allowed.

the relationship between the first party indemnitee and the second party indemnitor, and [2] [its liability] is <u>not due to any negligence on the part of the first party claiming indemnity</u>.'" <u>State v. Butte-Silver Bow Cty.</u>, 220 P.3d 1115, 1120, ¶ 33 (Mont. 2009) (quoting <u>Rogers v. W. Airline</u>, 602 P.2d 171, 174 (Mont. 1979)) (emphasis added). The court addresses the negligence prong, which is dispositive of Metro's indemnity claim.

Any level of negligence on the part of one claiming indemnity forecloses that indemnity claim, no matter how remote, passive, or secondary that party's negligence was in comparison to the negligence of the other party from whom indemnity is sought. <u>Metro Aviation</u>, 305 P.3d at 837, ¶¶ 23-24. Although there is evidence that the Metro Aviation pilot was at least partly negligent, the court need not make factual findings to determine that Metro does not have an indemnity claim against the United States. Metro cannot recover in indemnity regardless of which party was negligent. If Metro was not negligent (or if the United States was the sole negligent party), then Metro had no liability to the crash victims, and so no legal right to indemnity would exist. <u>See</u> <u>Rogers</u>, 602 P.2d at 175-76. If Metro alone was negligent, it is a tortfeasor and not entitled to indemnity. <u>Id.</u>; <u>Butte-Silver Bow Cty.</u>, 220 P.3d at 1120, ¶ 33. Metro cannot establish the second prong of the indemnity requirements.

The court's dispositive ruling on the negligence prong forecloses the need to analyze the special relationship argument. For the reasons set forth above, the United States is entitled to summary on Metro Aviation's indemnity claim under either state's law.[4]

---

[4]Applying Utah indemnity law, the court reaches the same result as the one reached under Montana law. Utah's Liability Reform Act prohibits a person from bringing a separate action for indemnity. <u>National Serv. Indus., Inc. v. B.W. Norton Mfg. Co., Inc.</u>, 937 P.2d 551, 555 (Utah Ct. App. 1997). As noted above, the purpose of indemnity is to shift the entire loss to a third

6

**Metro Aviation's Contribution Claim**

Contribution distributes loss among joint tortfeasors by requiring each tortfeasor to pay his or proportionate share based upon his or her proportion of the negligence that proximately caused the victim's injuries. Metro Aviation, 305 P.3d at 834, ¶ 10 (citing Durden, 983 P.2d at 948, ¶ 25). In Montana, "there was no right of contribution between joint tortfeasors at common law, and . . . in Montana a right to contribution, if any exists, must be found in the statutory law" at Montana Code Annotated § 27-1-703. Sprinkle v. Burlington N. R.R. Co., 769 P.2d 1261, 1262 (Mont. 1989).

To acquire a right to contribution, a tortfeasor must first be made a "party to an action" by a victim. Mont. Code Ann. § 27-1-703(1). In the matter of the Erickson settlement, no court action was filed. Metro urged the Montana Supreme Court to broadly interpret the word "action" to include a person's claim filed with insurance companies outside the court context. The state court declined to do so. See Metro Aviation, 305 P.2d at 835-36. Accordingly, Metro has no contribution claim against the United States for its settlement with the Erickson estate.

The situation is different in Montana when the tortfeasor is sued in court by a victim. The possibility of a right to contribution exists. But under the contribution statute, the tortfeasor must join a third party to the victim's underlying suit in order to obtain a right of contribution against the third party. Metro Aviation at 836-37, ¶¶ 17-21. Metro refers to this as the "mandatory

---

party. See Metro Aviation, 305 P.3d at 837, ¶ 23. "[A]ny action separate from the underlying tort action which seeks to redistribute loss based on degree of fault" is prohibited by the Utah statute, regardless of whether it is called "indemnity" or "renamed as [for example,] 'reimbursement' or 'implied indemnity' or even 'comparative implied indemnity' actions." National Serv. Indus., 937 P.2d at 555-56.

joinder rule." Although Metro Aviation was named in a lawsuit by Ms. Dengel's estate, Metro never joined the United States in that action. The United States was not involved in the settlement negotiations or settlement agreement. Accordingly, Metro does not have a right of contribution against the United States for any part of its settlement with the estate of Ms. Dengel.

In Utah, contribution law is essentially the same. The Utah Liability Reform Act limits liability to a proportion of that party's fault and does not allow a defendant to seek contribution from another party. Utah Code Ann. § 78B-5-820(2). Instead, a defendant who believes that a nonparty contributed to the plaintiff's injuries must join that party by means of a third-party complaint in order to achieve a fair apportionment. Field v. Boyer Co. L.C., 952 P.2d 1078, 1082 (Utah 1998); see also National Serv. Indus., Inc. v. B.W. Norton Mfg. Co., Inc., 937 P.2d 551, 556 (Utah Ct. App. 1997) (defendants must "raise cross-claims against each other in the underlying tort action or else such claims may be lost. As such, cross-claims for apportionment among joint tortfeasor codefendants are mandatory.") Metro Aviation and its insurers chose to settle with the passengers' estates before filing this proceeding against the United States. For that reason, under Utah law, the current action against the United States is not allowed.

The United States is entitled to summary judgment on Metro Aviation's contribution claim because under either state's law, Metro Aviation's contribution claim is not viable.

**Metro's Equal Protection Claim**

Metro claims that it could not have joined the United States to the underlying action in state court and so, given the Montana Supreme Court's ruling, it was left with no contribution remedy. Accordingly, Metro Aviation brings a cross-motion for summary judgment in which it maintains that the Montana contribution statute Section 27-1-703(4), is unconstitutional under

8

both the Montana Constitution and the United States Constitution because the statute's mandatory joinder requirement, as interpreted by the Montana Supreme Court, violates its equal protection rights by foreclosing its right to contribution.  Metro challenges the statute as applied, saying that the Plaintiffs, as defendants in the negligence action, could not seek contribution from the United States in state or federal court "because such nonparties could not be joined in the original negligence action because of jurisdictional or venue reasons" and so the "mandatory joinder rule" announced by the state court deprived them of their "unqualified right to obtain contribution from nonparties . . . ." (Id.)  Metro defines the protected class as tort defendants precluded by procedural circumstances from pursuing a statutory right to contribution.

The United States responds with various arguments, including its contention that Metro does not have standing to challenge the constitutionality of the contribution statute because it never attempted to join the United States in the original negligence action. The court agrees.

Metro never attempted to join the United States in the original negligence action, and it provides no analysis to support its contention that such an attempt would be futile.  Metro simply concludes that the United States could not be joined for jurisdictional or venue purposes.  But without testing that summary conclusion, Metro's argument is speculative.  Moreover, there is a persuasive argument that Metro could have joined the United States in the action by removing the negligence action to federal court on the basis that the United States is a potentially responsible party and the only forum in which to sue the United States is a federal court.

As for the venue issue, Metro unpersuasively relies on the venue decision of the federal court in Montana which determined that venue was proper in Utah, not Montana (where the original action was filed).  The venue issue arose only after the original negligence action was

9

settled. In the original negligence action, no venue issue was raised, much less tested. It would be speculation to conclude that the situation in the original negligence action would have precluded a claim against the United States based on venue hurdles. Accordingly, Metro has not established that it is a member of the class it defines in its briefs.

Alternatively, the court finds that Metro's constitutionality challenge to the contribution statute is an improper collateral attack on the Montana Supreme Court's July 16, 2013 decision. Metro contends that the "mandatory joinder requirement" is contrary to the expressed goal of the legislation and the language of § 27-1-703(1), and that the Montana Supreme Court's ruling "results in some members of the class of defendants in a negligence action, who were statutorily granted an unqualified right to contribution from nonparties in § 27-1-703(1), MCA, to be treated differently from other members of the same class." (Pls.' Cross Mot. for Summ. J. (Doc. No. 109) at ii.) This court may not act as an appellate court and review the Montana Supreme Court's ruling to determine whether it was a proper interpretation of the statute. See, e.g., Hutchison v. Marshall, 744 F.2d 44, 46 (6th Cir. 1984) ("[A] federal court may not set aside the state court's interpretation of state statutes.").

Similarly, Metro's claim is procedurally inappropriate. Metro contends that the Montana Supreme Court's interpretation rendered the statute unconstitutional for litigants in Metro's situation. According to Metro,

> [t]he Montana Supreme Court's Decision . . . construed [Montana's contribution statute § 27-1-703(4)] so as to render this section unconstitutional in part. This construction resulted in the creation of two classifications of Montana state court negligence defendants, consisting of a class who can pursue contribution from nonparties and another class of defendants, such as Metro, who cannot pursue contribution from a nonparty because the nonparty sought to be joined cannot be joined due to jurisdictional and/or venue purposes.

(Pls.' Reply Supp. Cross Mot. Summ. J. at i-ii (emphasis added).)  But Metro may not base its equal protection claim on the effect of a state court's interpretation of a state statute.  As the United States Supreme Court noted many years ago,

> We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied.  We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

Gryger v. Burke, 334 U.S. 728, 731 (1948).  See also Hutchison, 744 F.2d at 46 ("Even if it could be said that the state court's interpretation is wrong, it has long been recognized that 'a mere error of state law' is not a denial of due process. This rule applies with equal force to equal protection claims.") (quoting Gryger v. Burke, 334 U.S. at 731).

Because Metro lacks standing and because Metro's constitutionality claim is procedurally inappropriate, the court denies Metro's cross motion for summary judgment.

## ORDER

For the foregoing reasons, Defendant United States of America's Renewed Motion for Partial Summary Judgment Concerning Claims for Indemnity and Contribution (Doc. No. 99) is GRANTED.  Plaintiffs' Cross Motion for Summary Judgment (Doc. No. 109) is DENIED.

DATED this 16th day of June, 2014.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge